```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KATHERINE WILKERSON              :
        Plaintiff,               :    CIVIL ACTION
                                 :
        vs.                      :    NO. 04-CV-3212
                                 :
LABORATORY CORPORATION OF        :
AMERICA HOLDINGS, d/b/a LABCORP  :
        Defendant                :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                                         **July 13, 2005**

This case is now before the Court for resolution of Defendant Laboratory Corporation of America Holdings' ("LabCorp") Motion for Partial Summary Judgment against Plaintiff Katherine Wilkerson's Complaint. For the reasons which follow, the Motion is denied.

### Factual Background

This case arises out of a venipuncture (blood draw) procedure performed on Plaintiff by Cynthia Fullman, an employee of Defendant LabCorp. Specifically, Plaintiff went to LabCorp on June 10, 2002 to have blood drawn for laboratory testing. (Complaint, ¶ 4). The venipuncture procedure was performed by Cynthia Fullman, who had been hired as a phlebotomist (specialist in drawing blood) by LabCorp on December 5, 2000. (Defense Exhibit 1). According to the allegations set forth in the Complaint, Fullman inserted the needle into Plaintiff's left arm and repeatedly repositioned the needle in an attempt to find a

vein.  (Complaint, ¶ 4).  Plaintiff immediately complained of intense pain and burning in her arm, and she requested that Fullman withdraw the needle.  (Id. at ¶ 5).  Fullman ignored Plaintiff's requests, and instead continued to draw several tubes of blood.  (Id.).  After the blood was drawn, Plaintiff again complained to Fullman about the pain and burning throughout her arm.  (Id. at ¶ 6).  In response, Fullman offered no assistance other than placing a band-aid on Plaintiff's arm.  (Id.).

   After leaving LabCorp, Plaintiff went to the office of Dr. Katherine Sewell, the gynecologist who had ordered the testing, but Dr. Sewell was unable to provide treatment outside her specialty.  (Id. at  ¶ 7).  The next day, Plaintiff went to the emergency room at Thomas Jefferson University Hospital complaining of pain in her left arm.  (Id. at  ¶ 8).  At that time, Plaintiff was given Motrin and a sling and told to make an appointment with her primary care physician.  (Id.).  On June 14, 2002 Plaintiff was seen by her primary care physician, Kara Greeley, who diagnosed nerve damage and referred Plaintiff to the Philadelphia Hand Center.  (Id. at  ¶ 9).  Over the next three months, Plaintiff visited three physicians.  (Id. at  ¶¶ 10-13). Despite physical therapy, Dr. David Bosacco of Drexel Orthopedics found on September 24, 2002 that Plaintiff was developing a chronic regional pain syndrome known as reflex sympathetic dystrophy ("RSD").  (Id. at  ¶ 15).  Dr. Bosacco concluded that

the irritated nerve structure caused by the venipuncture procedure performed at LabCorp had led to Plaintiff's development of RSD.  (Id.).  Dr. Christopher Fanale of Drexel Neurologic Associates subsequently confirmed that Plaintiff suffers from RSD in her upper arm as a result of a "needle stick."  (Id. at ¶ 16).  Plaintiff continues to be a patient at Drexel Neurology Associates, taking medications and anesthetic blocks for RSD.  (Id. at ¶ 17).  Plaintiff also continues to engage in physical therapy, but her RSD has not abated.  (Id.).

In her Complaint, Plaintiff alleges that her injuries were caused by the negligence and/or carelessness of LabCorp. Specifically, Plaintiff asserts that LabCorp was negligent in hiring and retaining Fullman, an allegedly improperly trained phlebotomist.  (Id. at  ¶ 20(a)).  Plaintiff also contends that LabCorp was negligent in failing to supervise Fullman while she drew Plaintiff's blood.  (Id. at ¶ 20(b)).  Plaintiff further asserts that LabCorp is vicariously liable for Fullman's (1) improper positioning of the needle and/or pressing the needle too far into and/or through the vein, (2) probing for a vein when she knew or should have known that such action increases the chance of nerve injury, (3) failure to remove the needle immediately upon Plaintiff's complaints, (4) continuing to obtain tubes of blood when she knew or should have known that such action increases the chance of nerve injury, and (5) causing excessive

bleeding and hematoma by improperly performing the venipuncture. (Id. at ¶¶ 20(c)-(h)).  Finally, Plaintiff's Complaint alleges that she may suffer "lost earnings horizons."  (Id. at ¶ 24).

By this Motion for Partial Summary Judgment, Defendant argues that this Court should enter judgment in its favor regarding paragraphs 20(a),(b),(d),(f),(g), and (h) of Plaintiff's Complaint.  Defendant also moves for summary judgment as to the lost earnings claim in paragraph 24.  In her response, Plaintiff has agreed to voluntarily withdraw from her Complaint the claims based on paragraphs 20(b) regarding negligent supervision, 20(h) concerning excessive bleeding and hematoma, and 24 involving lost earnings horizons.  (Plaintiff's Response to Defendant's Motion, p.9).  Therefore, this Court's Discussion will solely address Defendant's Motion concerning paragraphs 20(a),(d),(f), and (g) of Plaintiff's Complaint.

### **Standards Governing Summary Judgment Motions**

In deciding a motion for summary judgment under Fed.R.Civ.P. 56, a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (internal citation omitted).  Indeed, Rule 56 provides that summary judgment is properly rendered:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4

>any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-32 (1986).  An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party.  Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 125-26 (3d Cir. 1994); Oritani Savings & Loan Assn. v. Fidelity & Deposit Co. of Md., 989 F.2d 635, 638 (3d Cir. 1993).

In Celotex Corp. v. Catrett, supra, the Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment.  Specifically, the Court in that case held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim.  Celotex, 477 U.S. at 323.  The

Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed.R.Civ.P. 56(e)).  This does not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.  Obviously, Rule 56 does not require the nonmoving party to depose its own witnesses.  Rather, Rule 56(e) permits a summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56, except the pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the required showing that a genuine issue of material fact exists.  Id.  See, also, Morgan v. Havir Mfg. Co., 887 F. Supp. 759 (E.D. Pa. 1994); McGrath v. City of Phila., 864 F. Supp. 466, 472-73 (E.D. Pa. 1994).

## Discussion

**I.   Plaintiff's Claim for Negligent Hiring and Retention of Cynthia Fullman**

**A.   Ruth McCall's Qualifications to Offer Expert Testimony**

Defendant first contends that any opinions or testimony offered by Plaintiff's expert, Ruth McCall, MT/ASCP, regarding LabCorp's hiring or retention of Cynthia Fullman should be stricken.  Specifically, Defendant asserts that McCall is not

qualified to testify about the applicable standard of care because she has experience hiring phlebotomists to teach, rather than work in a laboratory.  Defendant further argues that without McCall's testimony, Plaintiff cannot establish either the appropriate standard of care or any breach thereof by LabCorp.  Accordingly, Defendant requests that this Court enter judgment as a matter of law in its favor.

Federal Rule of Evidence 702 provides that a witness must qualify as an expert "by knowledge, skill, training or education."  The Third Circuit Court of Appeals has interpreted the qualifications which a witness must have to act as an expert:

> Rule 702 requires the witness to have specialized knowledge regarding the area of testimony.  The basis of this specialized knowledge can be practical experience as well as academic training and credentials.  We have interpreted the specialized knowledge requirement liberally, and have stated that this policy of liberal admissibility of expert testimony extends to the substantive as well as the formal qualifications of experts.  However, at a minimum, a proffered expert . . . must possess skill or knowledge greater than the average layman. . .

El Clock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000).  Furthermore, "an expert is permitted wide latitude to offer expert opinions, including those that are not based on first-hand knowledge or observation."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993).

Plaintiff's expert, Ruth McCall, MT/ASCP, is a registered medical technologist with more than thirty years of experience as a phlebotomist.  Since 1986, McCall has been an instructor in the

licensed medical technician program at Albuquerque Technical Vocational Institute / Community College, where she has been in charge of the healthcare technician program in phlebotomy since 1987.  As part of her responsibilities as an instructor and director of the program, McCall hires phlebotomists to teach theory and laboratory.  (McCall Depo., pp.43-44).  McCall has also authored a book called <u>Phlebotomy Essentials</u>, which is used in teaching phlebotomy students.  (<u>Id.</u> at p.58).  Currently, she is working on a CD ROM entitled <u>Phlebotomy Tutor</u>, which demonstrates errors in phlebotomy and their avoidance.  (<u>Id.</u> at p.64).

   Under the standards set forth by the Federal Rules of Evidence, as interpreted by the United States Supreme Court and the Third Circuit, McCall has competent knowledge of what skills are required in evaluating phlebotomists for hire, as she has been training them for nearly 20 years.  She likewise has experience in hiring phlebotomists to work in her training program and teach phlebotomy.  Moreover, McCall was educated as a medical technologist and now provides phlebotomy education both through her written materials and classroom instruction.  Thus, McCall appears well-qualified as an expert to opine that LabCorp was negligent in its hiring and retention of a technician whose basic training does not meet current standards by which phlebotomists must be judged to protect the public.  Similarly,

McCall is qualified to offer an expert opinion that LabCorp was negligent in failing to promulgate proper policies and procedures to fill employees' knowledge gaps.  Accordingly, at this procedural juncture, this Court finds it inappropriate to strike McCall's testimony and grant Defendant's Motion on such grounds.

      **B.    Genuine Issues of Material Fact Exist Regarding LabCorp's Negligence in Hiring and Retaining Cynthia Fullman**

Defendant contends that without Ruth McCall's testimony, Plaintiff's 20(a) claim must fail due to an inability to demonstrate that Fullman's negligence was foreseeable to LabCorp. Specifically, Defendant alleges that without McCall's testimony, Plaintiff cannot establish the standard of care or any negligent breach thereof by LabCorp.  It is well established under Pennsylvania law, however, that an employer may be liable in negligence in the following instances:

> if [the employer] knew or should have known that an employee was dangerous, careless, or incompetent and such employment might create a situation where the employee's conduct would harm a third person.

Brezinski v. World Truck Transfer, Inc., 755 A.2d 36, 39-40 (Pa. Super. 2005)(citing Dempsey v. Walso Bureau, Inc., 246 A.2d 418 (Pa. 1968)).  Moreover, an act is negligent if the harm was foreseeable to the class to which the complaining member belongs. Cmmw. Dept. of Hwy. v. Eldridge, 184 A.2d 488, 491-92 (Pa. 1962).

Based on the applicable law, this Court finds sufficient evidence to raise a genuine issue of material fact regarding the

foreseeability of Fullman's negligence.  Specifically, the evidence indicates that the propensity for nerve injury during a venipuncture was common knowledge in the laboratory community between two and four years prior to the venipuncture in question, and certainly at the time of Fullman's hiring in 2002.  (Plaintiff's Exhibit D, p.56).  In fact, even the Defendant's expert acknowledges that at all times relevant to this lawsuit, the propensity for severe nerve injury was widely known among phlebotomists.  (Id.).  It has further been shown that in hiring Fullman, LabCorp failed to ascertain whether she was aware of the possibility, prevention, and treatment of nerve injuries.  (Defense Exhibits 1,2).  LabCorp also failed to offer Fullman training in such areas.  (Id.).  Thus, there is adequate evidence from which a reasonable jury could find Fullman's negligence foreseeable, as LabCorp should have known that failing to ensure Plaintiff's knowledge of nerve injuries could seriously harm individuals in the public.

Defendant also argues that Plaintiff's claim must fail because she cannot prove a causal connection between negligence in LabCorp's hiring or retention of Fullman and Plaintiff's injuries.  This Court, however, finds the evidence sufficient to raise a genuine issue of material fact concerning the cause of Plaintiff's nerve damage.  Specifically, Plaintiff alleges both that Fullman repeatedly repositioned the needle and refused to

withdraw the needle when Plaintiff experienced pain. (Complaint, ¶¶ 4-5). While testifying, Ruth McCall stated that it is "common knowledge" among phlebotomists that if a patient experiences pain and burning, the phlebotomist should recognize the symptoms of a nerve injury and remove the needle. (McCall Depo., p.86). McCall further explained that failure to immediately remove the needle can increase a nerve injury's severity. (Id.). Likewise, Dr. Gerald Dworkin, D.O., Plaintiff's expert, has testified that a longer period of trauma to the nerve can cause a more serious injury. (Dworkin Depo., p.101). Even the Defendant's medical expert, Dr. Gerard Malanga, M.D., admits that excessive repositioning of the needle is inappropriate and may cause injury. (Malanga Depo., p.68).

Logically, if Fullman had known the symptoms that would appear if the needle came into contact with a nerve, she would not have probed, but instead would have removed the needle. Such removal could have arguably minimized the risk of severe nerve damage. Therefore, a reasonable jury could find that if LabCorp had acquainted itself with Fullman's lack of knowledge regarding the potential for nerve injuries, Plaintiff's injury could have been prevented or lessened. As a jury could find a casual link between Plaintiff's injury and LabCorp's inappropriate hiring and training, summary judgment is inappropriate as to paragraph 20(a) of Plaintiff's Complaint.

## II. Genuine Issues of Material Fact Exist Concerning LabCorp's Vicarious Liability

Plaintiff further alleges that LabCorp is vicariously liable for several of Fullman's negligent acts. (Complaint, ¶¶ 20(d),(f),(g)). The Pennsylvania law governing vicarious liability provides the following:

> [A]n employer is vicariously liable for the negligent acts of his employee which cause injuries to a third-party, provided that such acts were committed during the course of and within the scope of the employment. . . [T]he basic inquiry is whether such [employee] is subject to the alleged employer's control or right to control with respect to [her] physical conduct in the performance of the services for which [she] was engaged. The hallmark of an employer-employee relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished.

Valles v. Albert Einstein Med. Ctr., 758 A.2d 1238, 1244 (Pa. Super. 2000). LabCorp does not dispute that its interaction with Fullman constituted an employer-employee relationship under the Pennsylvania law governing vicarious liability. LabCorp contends, however, that Plaintiff does not provide sufficient evidence of Fullman's negligence to thereby find it vicariously liable. Specifically, LabCorp argues that Fullman properly positioned the needle and did not contribute to Plaintiff's injury by failing to immediately remove the needle.

First, LabCorp asserts that there is no evidence of improper positioning or pressing of the needle, as alleged in paragraph 20(d) of Plaintiff's Complaint. Plaintiff, however, alleges that Fullman "reposition[ed] the needle repeatedly while searching for

a vein." (Complaint, ¶ 4). In support of Plaintiff's assertion, McCall has offered testimony explaining that "moving the needle trying to find a vein" is likely to "[hit] . . . nerves, artery, [or] other structures in the arm." (McCall Depo., p.80). Similarly, Plaintiff testified that the needle looked approximately two inches long, with one inch entering her arm. (Wilkerson Depo., p.27). In support of this allegation, McCall has testified that it is possible for a needle to protrude through the vein when that length of needle is used. (McCall Depo., p.81). Moreover, Dr. Dworkin recognized that it was possible for the needle to have gone through the vein. (Dworkin Depo, p.89). Thus, this Court finds that hearing evidence about Fullman's probing and needle placement could lead a reasonable jury to conclude that the needle was improperly positioned and/or passed through the vein. Accordingly, summary judgment is inappropriate as to paragraph 20(d) of Plaintiff's Complaint.

LabCorp also argues that there is no evidence that Fullman's alleged failure to remove the needle immediately and continuing to draw blood caused and/or worsened Plaintiff's injuries, as alleged in paragraphs 20(f) and 20(g) of Plaintiff's Complaint. This Court, however, finds that a genuine factual contention is presented by the evidence indicating that Fullman's failure to immediately remove the needle caused and/or worsened Plaintiff's injuries. Specifically, Ruth McCall has testified that failing

to remove a needle immediately upon complaints of pain or symptoms of nerve damage falls below accepted standards of care. (McCall Depo., pp.86-87). McCall further explained that allowing a needle to remain in a patient's arm for a longer time-period can exacerbate a nerve injury. (Id. at pp.86, 88). Moreover, Dr. Dworkin has testified that Fullman's improper use of the needle caused Plaintiff's injury. (Dworkin Depo., pp.39, 66). Dworkin also testified that a longer period of trauma to a nerve will cause greater injury. (Id. at 101-102). Even the Defendant's expert medical witness concedes that the severity of a nerve injury will increase as the time of trauma increases. (Malanga Depo., pp.65-66).

    The testimony offered by Ruth McCall, MT/ASCP, Dr. Gerald Dworkin, D.O., and Dr. Gerard Malanga, M.D., supports the allegations in paragraphs 20(f) and 20(g) of Plaintiff's Complaint. Specifically, such evidence raises a valid factual issue as to whether Fullman's failure to remove the needle immediately when Plaintiff complained of pain caused or increased the nerve damage suffered. This Court finds such evidence sufficient to survive summary judgment, as Plaintiff has provided testimony from several medical experts pertaining to both the injury itself and the relationship between the injury and the alleged cause. Therefore, because sufficient evidence exists from which a reasonable jury could conclude that Plaintiff's

injury was caused and/or worsened by Fullman's failure to immediately withdraw the needle, summary judgment is inappropriate regarding the claims included in paragraphs 20(f) and 20(g) of Plaintiff's Complaint.

    An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHERINE WILKERSON | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| vs. | : | NO. 2:04-CV-03212 |
| | : | |
| LABORATORY CORPORATION OF | : | |
| AMERICA HOLDINGS, d/b/a LABCORP | : | |
| Defendant | : | |

**ORDER**

AND NOW, this 13th day of July, 2005, upon consideration of Defendant Laboratory Corporation of America Holdings' Motion for Partial Summary Judgment as to Plaintiff's Complaint (Doc. No. 17), and Plaintiff's response thereto (Doc. No. 22), it is hereby ORDERED that the Motion is DENIED, as follows:

(1) It appearing to this Court that Plaintiff has voluntarily withdrawn the claims asserted in paragraphs 20(b), 20(h), and 24 of the Complaint, Defendant's Motion for Summary Judgment with respect to these claims is DENIED AS MOOT; and

(2) Defendant's Motion for Summary Judgment as to the claims asserted in paragraphs 20(a),(d),(f), and (g) of the Complaint is DENIED.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER,  J.